1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                No.  1:18-cr-00126-DAD-BAM-5

12                Plaintiff,

13        v.                                  ORDER DENYING DEFENDANT PATRICK
                                              BURRIEL'S MOTION FOR MODIFICATION
14   PATRICK SHAUN BURRIEL,                   OF SENTENCE UNDER 18 U.S.C.
                                              § 3582(c)(1)(A)
15                Defendant.
                                              (Doc. No. 159)
16

17        Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C.

18   § 3582(c)(1)(A) brought on behalf of defendant Patrick Shaun Burriel.  (Doc. No. 159.)  That

19   motion is based in part on the purported risks allegedly posed to defendant by the ongoing

20   coronavirus ("COVID-19") pandemic.  For the reasons explained below, defendant's motion will

21   be denied.

22                                    **BACKGROUND**

23        On June 14, 2018, an indictment was returned charging defendant Burriel and his five co-

24   defendants with various drug and firearms offenses in a nine-count indictment, including Count

25   One for conspiracy to distribute and to possess with intent to distribute methamphetamine in

26   violation of 21 U.S.C. §§ 846 and 841(a)(1).  (Doc. No. 30.)  On January 9, 2019, defendant

27   Burriel entered a plea of guilty to Count One (the only count in which he was charged), pursuant

28   to a written plea agreement.  (Doc. Nos. 70, 74.)  On April 29, 2019, the court sentenced

                                              1

1   defendant Burriel to 78 months imprisonment in the custody of the U.S. Bureau of Prisons

2   ("BOP"), to be followed by a 36-month term of supervised release.  (Doc. Nos. 92, 93.)  The

3   court also imposed the mandatory $100 special assessment.  (*Id*.)

4   Defendant Burriel is currently serving his sentence at Federal Correctional Institution,

5   Terminal Island ("FCI Terminal Island") in San Pedro, California.  (Doc. Nos. 169 at 2–3; 175 at

6   3.)  As of the date of this order, defendant has served approximately 35 months, or 45% of his full

7   78-month custodial sentence.  (Doc. Nos. 175 at 3; 175-1 at 4.)  Accounting for good time credit,

8   his projected release date is January 1, 2024.  (Doc. Nos. 169 at 5; 175 at 3.)

9   On December 29, 2020, defendant filed a *pro se* motion seeking a reduction of his

10   sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 159.)  The court then referred

11   defendant's motion to the Federal Defender's Office.  (Doc. Nos. 160, 161, 162.)  On April 14,

12   2021, appointed counsel filed a supplemental memorandum in support of defendant Burriel's

13   motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  (Doc. Nos. 169.)  The

14   government filed its opposition to the pending motion on May 14, 2021, and defendant filed a

15   reply thereto on June 1, 2021.  (Doc. Nos. 175, 183.)

16   While his motion was pending before the court, defendant Burriel received both doses of

17   the Pfizer-BioNTech COVID-19 vaccine and is now fully vaccinated; he received the first dose

18   on April 20, 2021 and the second dose of the vaccine on May 12, 2021.  (Doc. Nos. 179 at 33—

19   sealed; 183 at 2.)

**LEGAL STANDARD**

21   A court generally "may not modify a term of imprisonment once it has been imposed."

22   18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment

23   of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may

24   not be modified by a district court except in limited circumstances.").  Those limited

25   circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*,

26   452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018

27   ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C.

28   § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their

own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).

In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)    extraordinary  and  compelling  reasons  warrant  such  a reduction; or
>
> (ii)   the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.*  When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."  The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP.  CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020).  However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.*  The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2).  After the CARES Act was

3

1    The applicable policy statement with respect to compassionate release in the U.S.

2    Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

3    compelling reasons."  U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g

4    Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash.

5    2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and

6    compelling reasons," even though that policy statement was issued before Congress passed the

7    FSA and authorized defendants to file compassionate release motions).  However, the Ninth

8    Circuit recently held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy

9    statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."  *United States v.*

10   *Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).  "In other words, the Sentencing Commission has not

11   yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant."  *Id.*

12   The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13

13   may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they

14   are not binding."  *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

15   In so holding, the Ninth Circuit joined the five other circuits who have addressed this

16   issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A)

---

17   enacted, the Attorney General issued a memo instructing the BOP to "immediately review all
18   inmates who have COVID-19 risk factors" beginning with those who are housed at facilities
     where "COVID-19 is materially affecting operations."  Office of Att'y Gen., *Increasing Use of*
19   *Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has
     acted on the Attorney General's guidance, including one case in which a sentenced prisoner was
20   released to home confinement after serving less than half his sentence from a facility that reported
     no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort*
21   *Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.
     com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the
22   prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release
     prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid*
23   *COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-
24   manafort-released-from-prison-amid-covid-19-fears.

25   [3]  According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C.
26   § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the
     community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  However, as the Ninth
27   Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C.
     § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G.
28   § 1B1.13(2)."  *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

1  motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a

2  defendant." *Id.*; *see, e.g., United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020)

3  ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and

4  compelling reasons that an imprisoned person might bring before them in motions for

5  compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated

6  version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980

7  F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for

8  compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have

9  full discretion to define 'extraordinary and compelling' without consulting the policy statement §

10  1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy

11  statement covering prisoner-initiated applications for compassionate release.  District judges must

12  operate under the statutory criteria—'extraordinary and compelling reasons'—subject to

13  deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In

14  short, we agree with the Second Circuit and the emerging consensus in the district courts:  There

15  is as of now no 'applicable' policy statement governing compassionate-release motions filed by

16  defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are

17  'empowered . . . to consider any extraordinary and compelling reason for release that a defendant

18  might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021)

19  ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test,

20  its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case

21  was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G.

22  § 1B1.13.").

23        In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

24  defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

25  *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

26  has not specifically addressed the question of which party bears the burden in the context of a

27  motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district

28  courts to have done so agree that the burden remains with the defendant.  *See, e.g., United States*

1   *v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United*

2   *States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

3                                               **ANALYSIS**

4          As district courts have summarized, in analyzing whether a defendant is entitled to

5   compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

6   defendant has satisfied three requirements:

7              First, as a threshold matter, the statute requires defendants to
               exhaust administrative remedies.   18 U.S.C. § 3582(c)(1)(A).
8              Second, a district court may grant compassionate release only if
               "extraordinary and compelling reasons warrant such a reduction"
9              and "that such reduction is consistent with applicable policy
               statements issued by the Sentencing Commission. *Id*. Third, the
10             district court must also consider "the factors set forth in Section
               3553(a) to the extent that they are applicable." *Id*.
11

12  *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v.*

13  *Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020);

14  *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No.

15  16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third

16  factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors

17  set forth in § 3553(a)).

18  **A.     Administrative Exhaustion**

19         Defendant asserts, and the government does not dispute, that defendant has exhausted his

20  administrative remedies prior to filing his pending § 3582 motion.  (Doc. Nos. 169 at 6; 175 at 3.)

21  Because failure to exhaust is normally viewed as an affirmative defense, which must be pled and

22  proven, the court will accept the government's concession and turn to the merits of defendant's

23  motion.

24  **B.     Extraordinary and Compelling Reasons**

25         According to the Sentencing Commission's policy statement, "extraordinary and

26  compelling reasons" warranting compassionate release may exist based on a defendant's medical

27  conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G.

28  § 1B1.13, cmt. n.1 (A)–(D).  As addressed above, even though the catch-all of "other reasons"

1    was included in the policy statement at a time when only the BOP could bring a compassionate

2    release motion, courts have agreed that it may be relied upon by defendants bringing their own

3    motions for reductions in their sentence under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No.

4    2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.)

5    Moreover, in light of the Ninth Circuit's decision in *Aruda,* while U.S.S.G. § 1B1.13 may inform

6    its determination, this court is not restricted thereby and instead has "full discretion to define

7    'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980

8    F.3d at 1111.

9          The medical condition of a defendant may warrant the granting of compassionate release

10   by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced

11   illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a

12   probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt.

13   n.1(A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate

14   release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage

15   organ disease, and advanced dementia."  *Id*.  In addition to terminal illnesses, a defendant's

16   debilitating physical or mental condition may warrant compassionate release, including when:

17          The defendant is

18          (I)   suffering from a serious physical or medical condition,

19          (II)  suffering from a serious functional or cognitive impairment, or

20          (III) experiencing deteriorating physical or mental health because of
21          the aging process,

22          that substantially diminishes the ability of the defendant to provide
             self-care within the environment of a correctional facility and from
23          which he or she is not expected to recover.

24   *Id*. at cmt. n.1(A)(ii).  Where a defendant has moderate medical issues that otherwise might not be

25   sufficient to warrant compassionate release under ordinary circumstances, many courts have

26   concluded that the risks posed by COVID-19 may tip the scale in favor of release when the

27   particular circumstances of a case are considered in their totality.  *See, e.g.*, *Parker*, 461 F. Supp.

28   3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates

1   suffering from conditions such as hypertension and diabetes are now at an even greater risk of

2   deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify

3   compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405

4   (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr.

5   Rodriguez's health problems, proximity to his release date, and rehabilitation would not present

6   extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant

7   reducing his sentence.").

8         Compassionate release may also be warranted based on a defendant's age and other

9   related factors.  Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at

10  least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because

11  of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of

12  imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[4]

13        In his pending motion, defendant argues that extraordinary and compelling reasons

14  warranting a reduction of his custodial sentence exist because he suffers from high blood pressure

15  and has a history of asthma and pneumonia, health conditions that increase his risk of suffering

16  severe illness if he were to be re-infected with COVID-19.  (Doc. No. 169 at 2–3.)  Defendant

17  acknowledges that he was infected with COVID-19 in May of 2020 and did not experience severe

18  complications, but he nevertheless fears re-infection.  (*Id.* at 3.)  Defendant also recognizes that

19  his medical records reflect that he is receiving treatment and monitoring for his hypertension,

20  with regular blood pressure readings, but those BOP medical records do not reflect any diagnosis

21  of his reported "mild" childhood asthma or pneumonia.  (*Id.*)  Rather, defendant points to records

22  from the California Department of Corrections and Rehabilitation ("CDCR") and Fresno County

23  Jail to show that while he was in CDCR's custody in 2009, he was prescribed an inhaler,

24  diagnosed with left lower lobe pneumonia, and tested for Valley Fever, which was neither

25  confirmed nor ruled out.  (*Id.*; Doc. No. 173 at 16–38—sealed.)  In addition, his CDCR medical

26

27    [4]  Here, however, because defendant Burriel is only 48 years old (Doc. Nos. 179 at 1—sealed;
173 at 2—sealed), his age and age-related factors do not play a role in consideration of his

28  pending motion.

1   records show that he was proscribed an inhaler for asthma again in 2017.  (Doc. No. 173 at 20—

2   sealed.)  Defendant argues that his hypertension is not being controlled by medical staff at FCI

3   Terminal Island because his blood pressure readings show that "his condition appears to have

4   remain unchanged," and the treatment recommended by the health care providers at that prison is

5   to "exercise more regularly and improve his diet by eating less salt," but the "pandemic has made

6   it only more difficult for [him] to maintain proper exercise, as BOP has restricted prisoner

7   movements, in an attempt to mitigate the spread of the virus."  (Doc. No. 169 at 3, 7–8.)

8         In its opposition to the pending motion, the government argues that the mere existence of

9   COVID-19 in society or in the correctional institution where defendant Burriel is imprisoned is

10   not an extraordinary and compelling reason justifying the granting of the requested relief.  (Doc.

11   No. 175 at 6.)  The government emphasizes that, most importantly, defendant Burriel has already

12   been fully vaccinated against COVID-19, which undercuts his argument that extraordinary and

13   compelling reasons exist based on the risk of severe illness posed to him if he were to contract

14   COVID-19 again.  (*Id.* at 7–8) (citing cases).  In addition, the government argues that because

15   defendant Burriel contracted COVID-19 in May of 2020 and did not suffer any severe

16   complications as a result, despite his having hypertension, that too undercuts his current argument

17   for compassionate release.  (*Id.* at 8.)  Finally, the government maintains that in any event,

18   defendant is receiving appropriate medical treatment for his hypertension at FCI Terminal Island.

19   (*Id.* at 6.)

20         In his reply, defendant acknowledges that he has been fully vaccinated, but he contends

21   that the vaccine "does not guarantee that he will remain safe from the virus while in prison" and

22   that "he remains at risk of contracting COVID-19 a second time and suffering serious health

23   consequences."  (Doc. No. 182 at 1–2.)  Defendant also reiterates that the medical staff at FCI

24   Terminal Island have not succeeded in controlling his hypertension, as shown by the recent blood

25   pressure readings documented in his BOP medical records that the government filed in

26   connection with its opposition.  (*Id.*)  In particular, those medical records show "a pattern of

27   increasingly high blood pressure readings through March of 2021," with "excessively high blood

28   /////

9

1   pressure readings of 150/96 and 140/88" in February and March 2021, respectively.  (*Id.* at 2;

2   Doc. No. 179 at 24–25—sealed.)

3         The court concludes that defendant has failed to show the existence of extraordinary and

4   compelling reasons calling for his release from confinement in light of the critical fact that he is

5   now fully vaccinated, combined with the fact that he suffered no severe complications when he

6   was infected with COVID-19 over a year ago despite his hypertension condition.

7         It is undisputed that hypertension is recognized by the U.S. Centers for Disease Control

8   and Prevention ("CDC") as a health condition that may place individuals at a high risk of

9   suffering severe illness from COVID-19.  *See People with Certain Medical Conditions*, Centers

10  for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

11  precautions/people-with-medical-conditions.html (last updated May 13, 2021); *Clinical Questions*

12  *about COVID-19: Questions and Answers, "Patients with Hypertension,"* Centers for Disease

13  Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-

14  Hypertension (last updated Mar. 4, 2021).  But there is no dispute that defendant's hypertension is

15  being treated and monitored by medical staff at FCI Terminal Island.  Moreover, the court is not

16  persuaded that the fact that defendant's condition has remained unchanged—that is, that he still

17  has high blood pressure readings—somehow means that defendant is receiving inadequate

18  treatment or care for his hypertension.  The court notes that defendant has merely stated in

19  conclusory fashion that he cannot maintain proper exercise because his movements are restricted

20  by FCI Terminal Island staff, but he stops short of describing any purported limitations or

21  explaining how or why he is unable to exercise in his cell.  In addition, defendant does not

22  address the medical staff's recommendation that he eat a diet with less salt, let alone argue that he

23  is unable to act on this recommendation.  Thus, defendant has not persuasively argued or

24  presented any evidence establishing that the conditions he is currently facing at FCI Terminal

25  Island render him unable to adequately provide for his self-care and his hypertension.

26        As to defendant's vaccination, he received his second dose of the Pfizer-BioNTech

27  vaccine on May 12, 2021.  (Doc. Nos. 179 at 33—sealed.)  Because more than two weeks have

28  passed since receiving his second dose, defendant is now fully vaccinated against the virus.  *See*

*COVID-19: When You've Been Fully Vaccinated*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last updated May 16, 2021).  Defendant essentially argues that the vaccines do not provide complete immunity. (Doc. No. 183 at 2.)  The court finds defendant's argument to be unpersuasive.  While it appears to be correct, as defendant contends, that vaccinated individuals may nonetheless contract COVID-19, defendant does not claim that a vaccinated individual may also suffer from a *severe* illness as a result—only that a vaccinated individual may still contract the virus.  Based upon news reports, it would appear that it is exceedingly rare for a vaccinated individual to both contract the virus and to suffer a severe illness as a result.  *See* Lila Seidman, *Napa County Records First Death of Fully Vaccinated Person from COVID-19*, June 7, 2021, https://www.latimes.com/california/story/2021-06-07/napa-county-records-first-fully-vacinated-person-covid-death (last visited June 9, 2021).  Here, defendant is seeking his release from prison based on the argument that he will suffer a severe illness if he were to contract COVID-19 again. According to the CDC, authorized vaccines in the U.S., including the Pfizer-BioNTech vaccine, "are highly effective at protecting vaccinated people against symptomatic and *severe* COVID-19."  *See COVID-19: Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last updated May 28, 2021) (emphasis added).  At this point, medical evidence strongly suggests that fully vaccinated individuals, like defendant Burriel, are very well protected against becoming severely ill from COVID-19.[5]  *See United States v. Ochoa-Alapisco,* No. 14-cr-378-ADM-LIB, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk . . . has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected"); *United States v. Willis*, 3:15-cr-00465-BR, 2021 WL 2179256, *3-4 (D. Ore. May 27, 2021) (concluding

---

[5]  The court would also note that as of the date of this order, the BOP is reporting that there are zero inmates and only two staff member at FCI Terminal Island who have tested positive with active cases of COVID-19.  *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited June 9, 2021).

that federal prisoners who have been fully vaccinated but suffer from chronic medical conditions that would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and compelling standard for compassionate release) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where defendant has been fully vaccinated); *United States v. Grummer*, ___ F. Supp. 3d ___, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.  Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. 16-cr-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").

In light of all of the above, the court concludes that although defendant Burriel suffers from hypertension, a medical condition that may place him at higher risk of becoming seriously ill if he were to be re-infected by COVID-19, he has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582(c)(1)(A), in large part because that risk has been mitigated by his receiving the COVID-19 vaccination. Therefore, his motion for compassionate release will be denied.

**C.      Consistency With the § 3553(a) Factors**

Finally, even if defendant Burriel's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the

/////

/////

1   requested reduction in his sentence would be consistent with consideration of the sentencing

2   factors set forth at 18 U.S.C. § 3553(a).[6]  *See Parker*, 461 F. Supp. 3d at 979.

3        In the pending motion, defendant contends that a reduction of his sentence is consistent

4   with the § 3553 sentencing factors because he has no record of disciplinary violations while in

5   BOP custody, he earned his GED and "completed dozens of educational courses," he has

6   maintained landscaping work assignments, and he has participated in self-study drug treatment

7   programs.  (Doc. No. 169 at 4.)  In particular, because all BOP programming has been placed on

8   hold during the pandemic, including the residential drug treatment program contemplated by the

9   court the time of sentencing, defendant Burriel has engaged in treatment by completing self-study

10  packets.  (*Id.* at 4–5.)  Defendant emphasizes that he has repeatedly requested to participate in

11  BOP's Residential Drug Abuse Program ("RDAP"), but that program has been placed on hold

12  due to the pandemic.  (*Id.* at 2, 4–5.)  Defendant explains that he had committed the offense for

13  which he was convicted in order to support his methamphetamine addiction, but he is committed

14  to treatment for that addiction.  (*Id.*)  To that end, defendant states that "[i]n November of 2020,

15  he was accepted into the residential treatment program at Teen Challenge in Reedley, California,

16  pending his release from custody," and he plans to enroll and complete their one-year residential

17  program.  (*Id.* at 5.)  In addition to this purported rehabilitation, defendant notes that a reduction

18  of his sentence would be consistent with the sentencing factors because (according to him) he has

19  served more than half of his custodial term, "[n]o victim suffered any physical harm or financial

20  /////

---

22  [6]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court
    shall consider:  the nature and circumstances of the offense and the history and characteristics of

23  the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote
    respect for the law, provide just punishment for the offense, afford adequate deterrence, protect

24  the public from further crimes of the defendant and provide the defendant with needed
    educational or vocational training, medical care, or other correctional treatment in the most

25  effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range
    established for the applicable category of offense committed by the applicable category of

26  defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing
    Commission; the need to avoid unwarranted sentence disparities among defendants with similar

27  records who have been found guilty of similar conduct; and the need to provide restitution to any

28  victims of the offense.

1   loss from [his] offense," and "nothing about the offense itself or [defendant himself] requires a

2   longer sentence" than the nearly three years he has already served in custody.  (*Id.* at 8.)

3        The government counters that "a careful weighing of Burriel's crimes in this case, his

4   criminal history, his characteristics, the need for just punishment, and to protect the public from

5   future crimes, all are inconsistent with a sentence reduction after applying the § 3553(a) factors."

6   (Doc. No. 175 at 9.)  Specifically, the government contends that a reduction in defendant's

7   sentence at this time would be inconsistent with the sentencing factors because he has served only

8   a relatively small portion of his original 78-month custodial sentence (approximately 35 months),

9   and that original sentence reflected the seriousness of his drug offense, particularly in light of his

10   extensive criminal history involving drug offenses.  (*Id.*)  The government emphasizes that

11   defendant "has a long history of drug abuse, and much of his criminal history is attributed to it."

12   (*Id.*)  Thus, according to the government, "[g]iven the nature and circumstances of the offense

13   and the history and characteristics of the defendant, compassionate release is not warranted in this

14   case."  (*Id.*)

15        In his reply, defendant emphasizes that at the time of his sentencing, the court "never

16   considered that BOP would have to cut off access to its vaunted 500-hour Residential Drug Abuse

17   Program [] and that the only way for [him] to access intensive in-person treatment would be to

18   place him on supervised release."  (Doc. No. 183 at 2.)  According to defendant, the balance of

19   the sentencing factors has been fundamentally altered by the fact that BOP has suspended the

20   RDAP program during the pandemic.  (*Id.* at 3.)  In addition, defendant reiterates his efforts

21   toward rehabilitation and attaches a letter of support from his GED instructor at Terminal Island

22   Adult School and a letter from the director of a correspondence Bible study course, confirming

23   that defendant "began a Bible study course approximately one year ago and has already

24   progressed to the latter stages of the course."  (*Id.* at 4; Doc. No. 183-1.)

25        As noted above, defendant is currently serving a 78-month sentence of imprisonment for

26   conspiracy to distribute and to possess with intent to distribute methamphetamine.  (Doc. Nos. 92,

27   93.)  At the time of his sentencing on April 29, 2019, defendant was found to be responsible for

28   2.40 kilograms of methamphetamine.  (Doc. No. 79 at 8.)  Specifically, at the direction of his co-

1    defendant Victor Garcia, who operated a drug trafficking operation in Fresno, California,

2    defendant Burriel and his co-defendant Michelle Madewell delivered approximately 2.40

3    kilograms of methamphetamine to two of defendant Garcia's customers.  (Doc. Nos. 70 at 10; 79

4    at 5–6.)  In addition, defendant Burriel was a customer of defendant Garcia and had requested to

5    purchase four ounces of methamphetamine from defendant Garcia's supply to support his drug

6    addiction.  (*Id.*)  With his early acceptance of responsibility, the U.S. Probation Office determined

7    that defendant's total offense level was 29 and his criminal history was V, resulting in an advisory

8    sentencing guideline range calling for a term of imprisonment of between 140 and 175 months.

9    (Doc. No. 79 at 17.)  Noting defendant's long history of drug abuse and his apparently sincere

10   desire to turn his life around, the probation officer recommended a low-end of the guideline range

11   sentence of 140 months in BOP custody.  (*Id.* at 21–22.)  The undersigned relied upon its careful

12   consideration of the § 3553(a) factors in varying downward significantly from the advisory

13   sentencing guideline range and imposing a 78-month term of imprisonment.  (Doc. No. 93 at 2.)

14         The court is not unsympathetic to defendant's disappointment that the BOP's RDAP

15   program has been unavailable to him during the pandemic and hopes that program will be

16   available again soon and that defendant can take advantage of it to some extent.  Nonetheless, the

17   court is not persuaded that a reduction in defendant Burriel's already arguably lenient sentence

18   would be consistent with consideration of the § 3553(a) sentencing factors.  First, defendant's

19   lengthy criminal history related to his drug addiction suggests that he may be likely to reoffend,

20   and the court finds that consideration of the risk of recidivism on the part of the defendant weighs

21   to some degree against the granting of compassionate release in this case.  *See United States v.*

22   *Magana-Lopez*, No. 11-cr-04200-RCC-JR, 2020 WL 3574604, at *2 (D. Ariz. July 1, 2020)

23   (denying compassionate release for a non-violent offender and discounting defendant's

24   contentions that he was at low risk of recidivism in part because he was "serving his sentence

25   after receiving prior drug trafficking").

26         Second, even if the court were to credit defendant's current belief that he will not

27   reoffend, "[t]he length of the sentence remaining is an additional factor to consider in any

28   compassionate release analysis,' with a longer remaining sentence weighing against granting any

15

such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). Here, as of the date of this order, defendant Burriel has served approximately half of the 78-month sentence imposed, even with good time credits are applied. (*See* Doc. Nos. 169 at 2; 175-1 at 4.) In the court's view, considering that defendant already received a well below-guideline range sentence, a reduction of defendant's 78-month sentence effectively to one of just under three years would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

Third, reducing defendant Burriel's custodial sentence to one of 35 months may result in unwarranted sentence disparities among his co-defendants. Neither defendant Burriel nor the government address this factor, but the court notes that co-defendant Garcia, who had a total offense level of 31 and criminal history category of I, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 120 and 135 months, was sentenced to an 87-month term of imprisonment. (Doc. Nos. 73 at 18; 94 at 2.) Co-defendant Madewell is scheduled to be sentenced by the court in December 2021, but the U.S. Probation Office's final presentence report has concluded that her total offense level was 25 and her criminal history category was VI, resulting in a guideline range calling for a term of imprisonment of between 110 to 137 months, though the probation officer in her case has recommended a 87-month term of imprisonment. (Doc. No. 100 at 20, 25.) Although the court has not yet sentenced co-defendant Madewell, there remains a significant possibility that she will ultimately be sentenced to a term of imprisonment longer than the 35 months that defendant Burriel has served to date.

/////

16

Thus, on balance, the court finds that granting defendant's motion and reducing his sentence to time served would not be consistent with the § 3553(a) sentencing factors.

### CONCLUSION

Because defendant Burriel has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 159) is denied.

IT IS SO ORDERED.

Dated:   __**June 10, 2021**__                    _____

UNITED STATES DISTRICT JUDGE

17